THE STATE OF OHIO, APPELLANT, *v.* BROWN, APPELLEE.

[Cite as *State v. Brown* (1992), 63 Ohio St.3d 349.]

(No. 91–34—Submitted January 21, 1992—Decided April 8, 1992.)

*Dean Holman,* Prosecuting Attorney, and *John J. Dolatowski,* for appellant.

*L. Ray Jones,* for appellee.

*Randall M. Dana,* Ohio Public Defender, and *Robert L. Lane,* urging affirmance for *amicus curiae,* Ohio Public Defender Commission.

WRIGHT, J.  This case requires us to define the proper scope of a search of an automobile incident to the driver's arrest for driving under the influence of alcohol.  The state urges us to reverse the lower courts on the basis of *New York v. Belton* (1981), 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768.  We decline to do so.  An arrest for a traffic violation does not *automatically* entitle an officer to conduct a detailed search of the arrestee's automobile.

The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution require the police to obtain a warrant based on probable cause before they conduct a search.[1]  However, the warrant requirement is subject to a number of well-established exceptions.  See, *e.g., Carroll v. United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (police may search an automobile without a warrant when they have probable cause to suspect that the automobile contains contraband); *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (police may search an automobile without a warrant to inventory its contents); *Texas v. Brown* (1983), 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (police may search suspicious items in plain view in an automobile).  The sole issue in this case is whether the warrantless search of Brown's automobile was justified under the line of cases that permits an officer to conduct a warrantless search incident to a lawful custodial arrest, in order to protect himself from any accessible

---

1.  The Fourth Amendment to the United States Constitution provides that:

   "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

   Section 14, Article I of the Ohio Constitution provides that:

   "The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized."

weapons.[2] See *Chimel v. California* (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685; *New York v. Belton, supra.*

The scope of a search incident to arrest was first defined in *Chimel v. California, supra.* "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. * * * A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 762–763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694.

In *New York v. Belton,* the United States Supreme Court applied *Chimel* to the search of an automobile incident to the arrest of one of its occupants. In *Belton,* a police officer pulled a car over for speeding. *New York v. Belton, supra,* 453 U.S. at 455, 101 S.Ct. at 2861, 69 L.Ed.2d at 772. While addressing the four men in the car, the officer smelled marijuana and saw an envelope marked "Supergold" that he associated with marijuana. He then ordered all four men out of the car and placed them under arrest for the unlawful possession of marijuana. The officer arrested them, patted them down, and had them stand near the expressway while he searched the car. As part of that search, the officer opened a zippered pocket in a jacket located on the back seat of the car and discovered cocaine. *Id.* at 455–456, 101 S.Ct. at 2861–2862, 69 L.Ed.2d at 772. The United States Supreme Court upheld the validity of the search. *Id.* at 462, 101 S.Ct. at 2865, 69 L.Ed.2d at 776.

The facts of this case are clearly distinguishable from *New York v. Belton.* In that case, the officer had arrested Belton and his companions for *possession of marijuana* prior to his search. The arrests were based on the officer's observation of an envelope that was in plain view and the odor of burning marijuana. These facts provided the officer with both probable cause to arrest the occupants for possession of marijuana and probable cause to

---

2. The sole proposition of law in the state's brief reads as follows:

"A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment which justifies a search incidental to arrest. That search may extend to the passenger compartment of the arrestee's vehicle and any containers found therein."

None of the other exceptions to the warrant requirement is applicable. Sergeant Meding admitted that he did not see or otherwise detect any evidence that made him believe that the car contained drugs or other contraband. He also testified that the car was never subjected to an inventory search.

search the vehicle for additional marijuana or evidence of marijuana use. See *California v. Acevedo* (1991), 500 U.S. ——, ——, 111 S.Ct. 1982, 1989, 114 L.Ed.2d 619, 631 (discussing *New York v. Belton* ). Because the search was reasonable based on probable cause, any evidence that the officer discovered while acting within the proper scope of that search was admissible, even if not related to the original charge.

We distinguish *New York v. Belton* from this case on its facts. A court should never " ' * * * formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' " *United States v. Raines* (1960), 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524, 529, citing *Liverpool, N.Y. & Phil. S.S. Co. v. Commrs. of Emigration* (1895), 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899, 901. In the case currently before this court, Brown was arrested for driving under the influence of alcohol, and Meding admits that he had no probable cause or other independent justification for searching the vehicle.

If *Belton* does stand for the proposition that a police officer may conduct a detailed search of an automobile *solely* because he has arrested one of its occupants, *on any charge*, we decline to adopt its rule.[3] As Justice Stevens pointed out, this rule permits an extensive search based on facts that could never support a warrant because of the lack of probable cause. *Robbins v. California* (1981), 453 U.S. 420, 452, 101 S.Ct. 2841, 2859, 69 L.Ed.2d 744, 767 (Stevens, J., dissenting, in companion case to *New York v. Belton, supra* ). We do not believe that the certainty generated by a bright-line test justifies a rule that automatically allows police officers to search every nook and cranny of an automobile just because the driver is arrested for a traffic violation.

We hold that the warrantless search of Brown's automobile was unreasonable and violated the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution. The item was not in plain view, Meding did not have probable cause to believe that the car contained drugs prior to his search, and the contents of the automobile were never inventoried. The only possible justification for this search is that the officer was searching for weapons or other evidence within the immediate control of the suspect, as defined by *Chimel v. California, supra.*

When Meding searched Brown's automobile, Brown had already been placed in the police cruiser, and was not resisting arrest. A back-up officer had arrived at the scene. Brown would have had no opportunity to obtain a

---

3. As the United States Supreme Court stated in *California v. Greenwood* (1988), 486 U.S. 35, 43, 108 S.Ct. 1625, 1630, 100 L.Ed.2d 30, 39: "Individual States may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution."

weapon or anything else from his car at this point. The contents of the automobile were no longer within the arrestee's immediate control, and consequently the officer was certainly not justified in opening a small container found in the glove compartment. See *Chimel v. California, supra;* 3 LaFave, Search and Seizure (2 Ed.1987) 7, Section 7.1(b) (the application of *Chimel* to an automobile search depends in part on [1] the position of the defendant and the officer in relation to the vehicle, and [2] the ease with which the defendant could obtain access to the vehicle or container). A police officer may not open a small, closed container found inside an automobile's glove compartment *solely* as a search incident to the driver's arrest for a traffic violation, after the officer has the suspect—and sole occupant of the vehicle—under control in the police cruiser.

The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, H. BROWN and RESNICK, JJ., concur.

