The STATE of Ohio, Appellant,

v.

STRINGER, Appellee.*

[Cite as *State v. Stringer* (1995), 103 Ohio App.3d 430.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94AP09–1298.

Decided May 11, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 74 Ohio St.3d 1404, 655 N.E.2d 184.

*Michael Miller,* Franklin County Prosecuting Attorney, and *Steven L. Taylor,* Assistant Prosecuting Attorney, for appellant.

*Judith Stevenson,* Franklin County Public Defender, and *David L. Strait,* Assistant Public Defender, for appellee.

CLOSE, Judge.

Plaintiff-appellant, the state of Ohio, appeals the judgment of the Franklin County Court of Common Pleas, sustaining a motion to suppress evidence seized from an automobile under the control of defendant-appellee, Anthony J. Stringer.

On the evening of June 5, 1993, Columbus Police Officer Thomas Quinlan observed appellee driving a sports car in excess of eighty miles per hour on Interstate 70. Officer Quinlan gave chase and pulled appellee over, whereupon appellee was unable to produce a driver's license or registration. Consistent with police procedure, appellee was asked to accompany Officer Quinlan back to his cruiser so that he could obtain further information. Appellee's passenger, a pregnant woman, was allowed to remain in the sports car.

While in the cruiser, appellant attempted to frustrate Officer Quinlan's investigation by answering his questions with false information. First, appellant offered a bogus Arizona address as his residence. A LEADS check on that address produced a "not on file" result. Because the sports car had Ohio license plates, Officer Quinlan then asked appellee whether he had ever had an Ohio license. Appellee answered that he had not. Nonetheless, Officer Quinlan ran a LEADS check on the social security number and birth date given him by appellee. The result of that check was a license holder with a name and description different from that of appellee.

The LEADS operator then ran additional checks on variations of the social security number offered by appellee. By transposing the last two digits of the number, LEADS was able to obtain appellee's data. That check revealed that appellee had an Ohio driver's license which had been indefinitely suspended in 1988. The check also revealed that appellee's driving privileges were under an FRA suspension. Officer Quinlan further learned that the sports car was registered to a Christopher Kirk.

The license suspensions, together with the false information given by appellee, prompted Officer Quinlan to continue his investigation with a local records check. That check revealed three active warrants for appellee's arrest for passing bad

checks. As a result of those warrants, appellee was retained in the cruiser and placed under arrest.

While in the cruiser with appellee, Officer Quinlan observed appellee's passenger making suspicious movements in the sports car. These movements caused Officer Quinlan to be concerned "for his own safety." Having secured appellee in the cruiser, Officer Quinlan approached the passenger and asked her if there were any weapons in the car. She responded that, if there were, she did not know it because the car did not belong to her.

Based on this suspicious response, Officer Quinlan questioned the passenger further. In response to his questions, the passenger gave Officer Quinlan answers which conflicted with those of appellee. Therefore, Officer Quinlan removed the passenger and positioned her ten to twelve feet away as he conducted a weapons search of the car interior.

As a result of that search, Officer Quinlan found a large sum of money secreted in a zipped bag on the car floor. Based on the conclusion that such large sums of money are often associated with drug transactions, Officer Quinlan contacted the K–9 unit of the police department. Soon thereafter, a police detective arrived at the scene. After the car had been moved to an off-ramp, a search of the vehicle was conducted and a small amount of marijuana was found.

Appellee was then taken to the police station, where he was given the *Miranda* warnings. After waiving his *Miranda* rights, appellee led police to a residence which he neither owned nor occupied. Located at that residence were twenty-six pounds of marijuana. Appellee was indicted on one count of trafficking in marijuana. Specifically, the indictment alleged that appellee knowingly possessed marijuana in an amount equal to or exceeding three times the bulk amount.

Appellee filed a motion to suppress on the basis that the initial search of the car, specifically the zipped bag, had been unlawful. Therefore, appellee argued that all evidence seized subsequent to that search should be excluded under the "fruit of the poisonous tree" doctrine. At the hearing on the motion, Officer Quinlan testified that his initial intent was to conduct a lawful sweep for weapons so that he could return the passenger to the car. That search revealed the money that was the starting point for all further searches. Therefore, the court properly noted that the key issue was Officer Quinlan's authority to search the bag where the money was found.

Relying on *State v. Brown* (1992), 63 Ohio St.3d 349, 588 N.E.2d 113, the court concluded that the search was not a proper weapons sweep. This conclusion was based on the fact that appellee had already been arrested and put in the cruiser. Appellee's passenger had also been removed from the car. Based on the

foregoing, the court found that the car interior was no longer an area within their immediate control from which they could obtain a weapon. Therefore, Officer Quinlan had no reasonable concern for his safety.

The court also considered Officer Quinlan's testimony that he intended to have the car impounded since its registered owner was not present to drive it away. Based on that testimony, the state argued that any subsequent search fell under the inventory exception to the warrant requirement. The court, however, determined that the clear purpose of the search was investigatory as opposed to inventory. Relying on Officer Quinlan's statements that he searched the car for his own safety, the court distinguished his actions from an inventory. Therefore, the court found that the search did not qualify under the inventory exception.

At the conclusion of the hearing, the court sustained appellee's motion, holding that everything following the initial unlawful search should be suppressed. Upon proper certification, appellant appealed, bringing the following assignments of error:

"First Assignment of Error

"The trial court erred when it failed to uphold the search of the car under the bright-line rule for searches incident to arrest recognized in *New York v. Belton* (1981), 453 U.S. 454, and when it failed to distinguish *State v. Brown* (1992), 63 Ohio St.3d 349.

"Second Assignment of Error

"The trial court erred when it found that Officer Quinlan had no reasonable basis to fear the presence of a weapon and when the court as a result refused to uphold the search of the car as a protective search for weapons under *Michigan v. Long* (1983), 463 U.S. 1032.

"Third Assignment of Error

"The trial court erred when it failed to uphold the search of the car under the doctrine allowing inventory searches, and when the court failed to apply the proper standard for determining whether the money in the carrying bag in the car would have been inevitably discovered."

Initially, we note that the Fourteenth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit the police from conducting warrantless searches and seizures. Detaining an automobile constitutes such a seizure and, as such, requires a warrant. *State v. Williams* (1988), 54 Ohio App.3d 117, 561 N.E.2d 1038. There are, however, a limited number of well-established exceptions to the warrant requirement. See *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. Among such recognized exceptions are searches incident to a lawful arrest, *Chimel v. Califor-*

*nia* (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685; the seizure of items which are in plain view, *Texas v. Brown* (1983), 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502; and the inventoried contents of an automobile, *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000.

■ The issue raised by appellant's first assignment of error is whether the warrantless search of the sports car was justified as a search incident to a lawful arrest. Relying on *State v. Brown, supra,* 63 Ohio St.3d 349, 588 N.E.2d 113, the trial court found that it was not. Therefore, appellant's first assignment of error takes issue with the trial court's failure to apply the bright-line test of *New York v. Belton* (1981), 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, to the instant case and to distinguish *Belton* from *Brown.*

In *Belton,* a New York state police officer stopped a vehicle for speeding. Belton was one of three passengers in the car. As the officer approached the car, he detected the odor of burning marijuana. During his questioning of the occupants, the officer saw an envelope marked "Supergold" lying on the car floor. Based on his experience, the officer associated the envelope and the name "Supergold" with marijuana.

The officer ordered all four men out of the car and arrested them for unlawful possession of marijuana. A search of the envelope confirmed that it did, in fact, contain marijuana. After performing a search incident to the arrest of each man, the officer proceeded to search the passenger compartment of the car. As a result of that search, the officer found a quantity of cocaine concealed in the zipped pocket of a jacket belonging to Belton.

Belton was indicted for criminal possession of a controlled substance and moved to have the cocaine suppressed. Based on these facts, the United States Supreme Court upheld the validity of the search as a search incident to a lawful arrest within the meaning of *Chimel.* The court then proceeded to set up a bright-line test for other similar searches.

*Chimel* stands for the proposition that a lawful custodial arrest justifies the contemporaneous warrantless search of the arrestee and the area within the arrestee's immediate control. The decision, however, fails to provide a useful definition of "area within immediate control." The court merely construed the phrase to mean "the area from within which [an arrestee] might gain possession of a weapon or destructible evidence." *Id.,* 395 U.S. at 762–763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. However, the court specifically excluded drawers or other closed or concealed areas in the room in which the arrest takes place. *Id.* at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. Thus, *Chimel*'s progeny has resulted in confusion in the application of this limiting principle to searches incident to lawful arrests.

The *Belton* court recognized this problem, noting that "no straightforward rule has emerged from the litigated cases respecting the question involved here—the question of the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants." *Id.*, 453 U.S. at 459, 101 S.Ct. at 2863, 69 L.Ed.2d at 774. For that reason, the *Belton* court set forth a concise standard to guide law enforcement in conducting such searches. Expanding the perimeters established by *Chimel*, the syllabus of *Belton* provides:

"Not only may the police search the passenger compartment of the car in such circumstances, they may also examine the contents of any containers found in the passenger compartment. And such a container may be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have."

In *Brown*, the defendant was arrested for drunk driving. The arresting officer placed the driver in his cruiser and searched the interior of the car. A search of the glove box revealed seven sugar cubes laced with the drug LSD. The LSD was ultimately suppressed and, on appeal, the state urged that the suppression be reversed on the authority of *Belton*. The Ohio Supreme Court declined the application of *Belton*, holding that "[a]n arrest for a traffic violation does not *automatically* entitle an officer to conduct a detailed search of the arrestee's automobile." (Emphasis *sic.*) *Id.*, 63 Ohio St.3d at 350, 588 N.E.2d at 114. The court further held: "If *Belton* does stand for the proposition that a police officer may conduct a detailed search of an automobile *solely* because he has arrested one of its occupants, *on any charge*, we decline to adopt its rule." (Emphasis *sic.*) *Id.* at 352, 588 N.E.2d at 115.

In so holding, the Ohio Supreme Court rejected *Belton*'s bright-line standard in favor of a case-by-case analysis based on probable cause. The court then outlined the factual distinctions between the two cases. The court noted that, in *Belton*, the odor of marijuana and the envelope marked "Supergold" provided the officer with probable cause, independent of the traffic stop, to conduct a search. That was not the case, however, in *Brown*. In *Brown*, the officer did not have probable cause to believe that contraband was in the car prior to his search. The court further noted that the contraband was not in plain view. There was no independent basis for the search. Therefore, the only remaining justification for the search was to retrieve weapons and destructible evidence from the arrestee's immediate control.

However, at the time the search was conducted, Brown was under arrest and secured in the police cruiser. Therefore, the court refused to construe the interior of the car as an area within Brown's immediate control. Under the rule of *Brown*, the trial court in the instant case likewise held that the sports car was

not in the immediate control of appellee. Accordingly, the trial court refused to justify the search as an exception to the warrant requirement. This outcome is consistent with our holding in *State v. Hines* (1993), 92 Ohio App.3d 163, 634 N.E.2d 654, wherein we held that a weapons search of a vehicle was not justified, where the defendant had been removed from the automobile and secured in a police wagon ten feet away.

Appellant argues, however, that *Belton* survives *Brown* for purposes of the instant case. Initially, appellant argues that *Brown*'s fact-specific syllabus limits application of the case to instances where the arrestee is the "sole occupant of the vehicle." We recognize that some courts have distinguished *Brown* as a sole-occupant case. See *State v. Sherred* (June 6, 1994), Richland App. No. 93–71, unreported, 1994 WL 313795. Based on the factual determinations of the trial court, however, we refrain from so distinguishing. We further hold that the trial court did not err in failing to make such distinction.

*Brown* properly noted that search and seizure cases must be determined on a fact-specific basis. In making its assessment, a court must look to the totality of the circumstances to determine whether there was a reasonable suspicion that an arrestee is armed. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489. Of crucial importance in this case is the fact that appellee was arrested on an unrelated charge and secured in the cruiser at the time of the search. Nonetheless, Officer Quinlan testified that his search of the sports car was a protective sweep for weapons. Certainly, if there were weapons in the car at the time of the search, the officer had no reasonable belief that appellee could gain access to them. Likewise, appellee's passenger had been removed from the car and positioned ten to twelve feet away.

For the reasons set forth above, the trial court correctly found that the search conducted in this case does not properly fall under any of the enumerated exceptions to the warrant requirement. Appellant's first assignment of error is overruled.

In addressing appellant's second assignment of error, we initially note that this court is bound by the trial court's findings of fact. In the instant case, the court made a factual determination that, due to appellee having been secured in the cruiser, Officer Quinlan had no reasonable basis to fear that his safety was in jeopardy. The court further determined that the passenger did not pose a threat, as she had also been removed from the car. Therefore, any weapons contained in the car were not accessible to her.

Appellant challenges these findings of the court on the ground that they are contrary to *Michigan v. Long* (1983), 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201. *Long* provides that the "[p]rotection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a

danger." *Id.* at 1049, 103 S.Ct. at 3480–3481, 77 L.Ed.2d at 1219–1220. In the instant case, appellant sets forth a number of factors which arguably made Officer Quinlan's fear of danger reasonable. However, the record does not indicate that the trial court failed to consider all of the points raised by appellant herein. Rather, the trial court considered these factors and specifically found that there was no rational basis for a protective sweep of the car.

■ On review, a trial court's decision shall be affirmed unless it amounts to an abuse of discretion with respect to the factual findings. It is now well settled that an abuse of discretion connotes more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142. Under this standard, an appellate court may not substitute its judgment for that of the trier of fact.

Upon the factual finding of an absence of reasonable threat to Officer Quinlan, the trial court correctly applied the law in concluding that the protective search was not authorized. Accordingly, appellant's second assignment of error is overruled.

■ Appellant's third assignment of error is two-fold. Appellant urges that (1) the court erred in failing to uphold Officer Quinlan's search as a valid inventory; and (2) the court erred in failing to allow the evidence under the inevitable discovery doctrine.

In granting appellee's motion to suppress, the court refused to consider the search as a legitimate inventory based on Officer Quinlan's testimony that the search was conducted as a protective sweep for weapons. Specifically, the court made the following factual finding:

"So what I'm suggesting to you is this was not an inventory at all. I think the police officer went out there and felt that he had a search incident to a lawful arrest for his own protection and he took the money. He may have later decided that he'd be better off if he called it an inventory, but I don't believe, my finding of fact is that was not an inventory search."

Based on Officer Quinlan's investigatory purpose at the time of the search, the court found his subsequent claim of inventory to be unpersuasive. Appellant now argues, however, that Officer Quinlan's improper intent at the time of the search is not fatal if there could have been *some* legitimate purpose at the time the search was made. Specifically, appellant argues that the validity of a search is not dependent on the label chosen by the police officer. Rather, the question is whether the search would be allowed under any legal theory. *Scott v. United States* (1978), 436 U.S. 128, 137–139, 98 S.Ct. 1717, 1723–1724, 56 L.Ed.2d 168, 177–179. Given the facts of the instant case, appellant is not correct.

In support of its position, appellant cites *State v. Evans* (1993), 67 Ohio St.3d 405, 618 N.E.2d 162, wherein the court held that searches conducted with a dual purpose will be upheld if any single purpose is deemed valid. Appellant urges that the search, although not a proper weapons sweep, could have been properly justified as an inventory of a car which was about to be impounded. However, application of *Evans* to the case *sub judice* requires that Officer Quinlan's purpose at the time of the search was, in fact, dual. The trial court made a factual determination that it was not.

The decision of the trial court indicates that the judge considered Officer Quinlan's inventory justification to be after the fact. In order to apply the dual purpose rule, however, a proper purpose must have been present at the time the search was made. Based on the court's determination that the requisite purpose was absent, the court did not abuse its discretion in failing to accept the search as a valid inventory. Appellant's argument on this point is without merit.

■ Turning to appellant's second point, appellant urges this court to apply the "inevitable discovery" rule to the product of Officer Quinlan's search. See *Nix v. Williams* (1984), 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377. Appellant argues that, since the sports car was registered to a person other than either appellee or his passenger, police procedure required that the vehicle be impounded upon appellee's arrest. Pursuant to the impounding, an inventory of the car would have been made, during which the money and drugs would have inevitably been discovered.

In *Nix*, the United States Supreme Court approved the inevitable discovery rule, holding that evidence may not be suppressed as the result of an illegal search and seizure if the prosecution can show by a preponderance of the evidence that the objectionable material would have been discovered through lawful means. Appellant contends that it met its burden of proving that the car would have been impounded, thus giving rise to a lawful inventory.

Appellee challenges appellant's argument on the basis that the state failed to present evidence of a policy from the Columbus Police Department, confirming that an inventory of the car would have included a search of closed containers. In support of his position, appellee cites *State v. Hathman* (1992), 65 Ohio St.3d 403, 604 N.E.2d 743, wherein the court held in its syllabus:

"1. To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine.

"2. If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be

opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers."

In an effort to establish the policy of the Columbus Police Department, Officer Quinlan identified state's exhibit No. 2. Exhibit No. 2 was a document dated May 10, 1993, which read:

"Due to recent court decisions, *Ohio v. Hathman* and *State v. Brown,* it is necessary for the Division to implement the following policy effective immediately when impounding *all* vehicles.

"Conduct an inventory of the vehicle contents, to include all containers within the entire vehicle, including the trunk if a key or access is available. Containers which are locked, for which keys or combinations are not available, and wrapped packages or parcels, will be locked in the trunk. Money and items that are at high risk of theft will be turned into the property room." (Emphasis *sic.*)

While appellee argues that this directive is insufficient, we hold that this statement of policy shows, as it was unrebutted, that the container full of money would have been discovered upon an inventory of the car's contents. In addition, Officer Quinlan testified that he intended to impound the car prior to his search of the bag, thus indicating that an inventory of the closed container would have inevitably occurred. Therefore, the relevant inquiry is whether the trial court abused its discretion in failing to apply the inevitable discovery rule to the items uncovered as a result of Officer Quinlan's search of the bag.

As a general rule, misapplication of the law to the facts is always an abuse of discretion. *Thirty Four Corp. v. Sixty Seven Corp.* (1993), 91 Ohio App.3d 818, 633 N.E.2d 1179. The unrebutted evidence before the trial court indicated that, upon appellee's arrest, the sports car would have been impounded. The evidence further indicated a policy of searching closed containers pursuant to a car inventory. Thus, the state met the requirements of *Hathman.* Therefore, the court should have applied the inevitable discovery rule as set out in *Nix.*

Under the inevitable discovery rule, the trial court erred only in suppressing the money and the small amount of marijuana found in the sports car. However, appellee was charged with possessing a large quantity of marijuana at a location far removed from the vehicle. The rule does not operate to permit the admission of the contraband found at that distant location.

■ The record contains insufficient evidence to show by a preponderance of the evidence that an inventory of the sports car would have inevitably led to the discovery of the additional quantity of contraband at a location far removed. Rather, had appellee been taken into custody on the warrants and offered the assistance of counsel, he would have been faced with the charges related to the checks, speeding, and possession of the small amount of marijuana found in the

car trunk as the result of an inventory. There is no evidence that an inventory alone would have led to the search which ultimately provided the basis for a major trafficking charge.

To the extent that the trial court suppressed the discovery of the contraband at a remote location, appellant's third assignment of error is overruled. To the extent that the trial court overruled the discovery of contraband and money in the vehicle driven by appellant, the third assignment of error is sustained.

For the foregoing reasons, appellant's first and second assignments of error are overruled. The third assignment of error is sustained in part. The entry granting appellee's motion to suppress is reversed insofar as it pertains to items found in the vehicle being driven by appellant. The cause is remanded to the Franklin County Court of Common Pleas for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

JOHN C. YOUNG and TYACK, JJ., concur.