OPINION
On February 26, 1997, Deputy Jim Miller of the Holmes County Sheriff's Department went to the Dutch Cupboard, a restaurant in Berlin, to investigate a complaint made by Monica Yerian against her estranged husband, appellee Todd Yerian. Monica worked at the restaurant. Monica told Deputy Miller that her husband was coming into the restaurant, intimidating and harassing her, and also following her to and from work and around the county.
The next day, Deputy Miller advised Detective DeFelice of the report received from Monica Yerian. A formal written complaint was not made.
The next day, Detective DeFelice was traveling on State Route 39 from New Philadelphia toward Berlin. While in transit, he received a radio transmission from the Sheriff's Department dispatcher, informing him that Monica had made a 9-1-1 call to the Sheriff's Department. The dispatcher relayed that Monica was at her child's babysitter's house, across from Highland High School, just east of Berlin. Appellee had followed her through Berlin, and was waiting for her across the road. The dispatcher also told the detective that the Department had a copy of a restraining order against appellee, restraining him from any contact with Monica.
Detective DeFelice received another radio transmission, indicating that appellee was moving west. He was given a description of appellee's vehicle, and the license plate number. Detective DeFelice saw the vehicle in the parking lot next to the Dutch Cupboard restaurant.
The detective pulled into the parking lot and approached appellee's vehicle. He asked appellee whether he was Todd Yerian. Appellee responded affirmatively. The detective asked him if he had been at Highland High School; appellee again answered in the affirmative. The detective then asked appellee what he was doing. Appellee responded that he was waiting for Monica to go by. The detective asked appellee if he received a paper from the court restraining him from contact with Monica. Appellee indicated that he had received the paper, but had left it at home. The detective observed a pair of binoculars on the front seat of the car. He also noticed a big stick on top of additional clutter in the back seat of the car, ready at hand. The detective went to his car, and when he returned, he noticed that appellee had concealed the binoculars.
The detective placed appellee under arrest for Stalking in violation of R.C. 2903.211(A). Appellee moved to suppress the binoculars and club, and any statements he made to the detective, on the basis that the detective lacked probable cause to arrest him. Following a hearing on the motion to suppress in the Holmes County Court, the court found that the officer did not have probable cause to make a warrantless arrest of appellee, and granted the motion to suppress.
The State has appealed the suppression judgment pursuant to App.R. 5(B):
ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT/APPELLEE'S MOTION TO SUPPRESS AS THE RECORD CLEARLY REVEALS SUFFICIENT PROBABLE CAUSE TO ARREST THE DEFENDANT.
Appellee argues that because Monica did not give the police department a written statement alleging that appellee had committed the offense of Menacing by Stalking, the officer did not have authority to arrest him without a warrant pursuant to R.C.2935.03.
R.C. 2935.03(B) provides in pertinent part:
 (B)(1) When there is reasonable ground to believe that . . . the offense of menacing by stalking as defined in section 2903.211 [2903.21.1] of the Revised Code, . . . has been committed within the limits of the political subdivision, . . . a peace officer described in division (A)(1) of this section may arrest and detain until a warrant can be obtained any person whom the peace officer has reasonable cause to believe is guilty of the violation.
 (2) For purposes of division (B)(1) of this section, the execution of any of the following constitutes reasonable ground to believe that the offense alleged in the statement was committed and reasonable cause to believe that the person alleged in the statement to have committed the offense is guilty of the violation:
 (a) A written statement by a person alleging that an alleged offender has committed the offense of menacing by stalking or aggravated trespass; . . .
While R.C. 2935.03(B)(2)(a) provides that a written statement alone gives an officer reasonable cause to arrest for Menacing by Stalking, the statute does not make this the exclusive method for determining reasonable cause. Pursuant to R.C. 2935.03(B)(1), an officer may still make a warrantless arrest for Menacing by Stalking if he possesses reasonable cause under the standard legal definition of the phrase.
R.C. 2903.211(A) provides that no person, by engaging in a pattern of conduct, shall knowingly cause another to believe that the offender will cause physical harm or mental distress to the other person. Probable cause exists when a reasonably prudent person would believe that the person to be arrested has committed a crime. E.g., State vs. Timpson (1974), 38 Ohio St.2d 122.
In the instant case, the arresting officer was very experienced, as he had been with the Department for thirteen years. He had received information the day before the arrest from Deputy Miller concerning Monica's complaints of intimidation and harassment by appellee. When engaged in a common investigation, police officers may reasonably rely on information provided by other officers in making a warrantless arrest. State vs.Henderson (1990), 51 Ohio St.3d 54, syllabus.
The very next day, the detective was near Berlin when he heard a dispatch over the radio that Monica called to complain that appellee had followed her, and was waiting for her. The dispatch further relayed that Monica was afraid for her safety. The officer received additional information from the dispatcher that there were court papers restraining appellee from any contact with Monica. Information received over the police radio is considered to be trustworthy for purposes of establishing probable cause. State vs. Foltz (1968), 13 Ohio St.2d 79, cert. denied,393 U.S. 854.
Detective DeFelice was also notified that appellee's vehicle was headed west on State Route 39, and was given a description and license plate number of the vehicle. He spotted the vehicle in the parking lot of the restaurant where Monica worked, and where the previous complaint had taken place. In addition, the information given to the officer was that the restraining order specifically prohibited appellee from any contact with his wife at the restaurant.
Upon approaching the car, the detective confirmed that the person in appellee's vehicle was, in fact, appellee. When he asked appellee what he was doing, appellee replied that he was waiting for Monica. Appellee acknowledged receipt of the restraining order, although he did not indicate that he had read the divorce papers. Appellee had binoculars and a stick in the car, and attempted to hide the binoculars when the officer went back to his cruiser.
Under the facts as outlined above, the officer clearly had probable cause to believe that appellee had committed the offense of Menacing by Stalking in violation of R.C. 2903.211(A). Having such probable cause, seizure of the binoculars and stick was legal as a search incident to a lawful arrest. See, State vs. Brown
(1992), 63 Ohio St.3d 349, cert. denied, 113 S.Ct. 182.
The Assignment of Error is sustained.
The judgment of the Holmes County Court suppressing the binoculars, stick, and statements of appellee made to the officer after the arrest is vacated. The case is remanded to that court for further proceedings according to law.
By: Reader, J., Farmer, P. J. and Wise, J. concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Holmes County Court suppressing the binoculars, stick, and statements of appellee made to the officer after the arrest is vacated. The case is remanded to that court for further proceedings according to law. Costs to appellee.