{¶ 45} I must respectfully dissent. The majority is correct that "[t]he limited purpose of the search was to inventory valuables" and that the police officer clearly "exceeded the permissible scope of the inventory search by seizing items that were not immediately incriminating." In State v. Chatton, the Supreme Court of Ohio addressed the question of expanding a routine traffic stop into a full scale search for evidence of criminal activity.[4] In Chatton, the court concluded that, "because the police officer no longer maintained a reasonable suspicion that [the driver's] vehicle was not properly licensed or registered, to further detain [the driver] and demand that he produce his driver's license is akin to the random detentions struck down by the [United States] Supreme Court inDelaware v. Prouse."[5] A reasonable suspicion that a detainee is engaged in criminal activity must exist for as long as the detention does.[6] The lawfulness of the initial stop will not support a "fishing expedition" for evidence of crime.[7] The Sixth Appellate District has also criticized the practice of using the lawfulness of an initial stop to support a "fishing expedition" for evidence of crime.[8]
 {¶ 46} As stated by the United States Supreme Court, inSouth Dakota v. Opperman, inventory searches of automobiles satisfy three distinct needs: "[1] the protection of the owner's property while it remains in police custody; * * * [2] the protection of the police against claims or disputes over lost or stolen property; * * * and [3] the protection of the police from potential danger."[9]
 {¶ 47} The existence of multiple cell phones is simply not indicative of criminal activity. The conduct of the police officers in calling the cell phone and, then, accepting a phone call from their own dispatcher on one of the seized phones demonstrates the rapidly burgeoning scope of the "inventory search" that had grown into a "fishing expedition." To demonstrate the breadth of today's holding, consider the following scenario. Suppose that, rather than multiple cell phones, we were dealing with laptop computers. In this "inventory" search of a motor vehicle incident to a routine traffic stop, would the police be permitted to open the laptop computers and begin browsing the hard drive to locate the internet sites that had recently been accessed? Clearly not. TheFourth Amendment would not allow such an excursion into the privacy of one's possessions. Why is a cell phone any different?
 {¶ 48} The bottom line is the "inventory" search was expanded to begin a new investigation, and that is not permitted. As stated by Justice Powell in his concurring opinion in Opperman,
while the interest of protecting the police from liability is an important concern, such concern does not permit "the unrestrained search of an automobile and its contents."[10]
 {¶ 49} This was an inventory search and nothing more. Calling it a different name does not change the character of the search, or the protections that have been violated. The car was about to be towed, and the driver was about to go to jail. It became an investigatory search, in violation of the Fourth Amendment's prohibition of "unreasonable" searches, because the police officer believed he was on to a new lead and a new crime.
 {¶ 50} As stated by Justice Black of the United States Supreme Court, "[t]he relevant test is not the reasonableness of the opportunity to procure a warrant, but the reasonableness of the seizure under all the circumstances. The test of reasonableness cannot be fixed by per se rules; each case must be decided on its own facts."[11]
 {¶ 51} In this case, it is clear that the actions of the police officers departed from an inventory search and converted into a new investigation of a separate and unrelated crime. The Supreme Court of Ohio very clearly stated, "[a] search which is conducted with an investigatory intent, and which is not conducted in the manner of an inventory search, does not constitute an `inventory search' and MAY NOT BE USED AS A PRETEXT TO CONDUCT A WARRANTLESS EVIDENTIARY SEARCH."[12]
 {¶ 52} For the reasons set forth above, I agree with the majority's correct analysis that the police officers' actions qualify as an improper inventory search. However, the majority holds that the search was a valid search incident to arrest. I disagree.
 {¶ 53} In determining the search did not violate appellant'sFourth Amendment protections, the majority cites the Supreme Court of Ohio's holding in State v. Murrell.[13] InMurrell, the Supreme Court of Ohio overturned its prior holding in State v. Brown, and adopted the holding of the United States Supreme Court in New York v. Belton.[14] In State v.Brown, the Supreme Court of Ohio declined to follow Belton,
because the court believed Belton unnecessarily infringed onFourth Amendment rights.[15] States are permitted to interpret their own constitutions in a way that affords additional safeguards.[16]
 {¶ 54} Chief Justice Moyer's dissenting opinion in Murrell
sets forth the following history of the evolution of a search incident to arrest as it relates to automobiles:
 {¶ 55} "When a police officer arrests a vehicle occupant, the arrestee is generally removed from the automobile. At that point, there is no longer any danger to the officer from anything in the passenger compartment of the vehicle and it is not possible for the arrestee to destroy evidence that may be in the vehicle. InBrown, we observed that the search of the passenger compartment of a vehicle after the occupant had already been arrested could not be justified by the same motivations as Chimel because `the contents of the automobile were no longer within the arrestee's immediate control.'"[17] [18]
 {¶ 56} Similarly, in the case at bar, Schultz was secured in the police car when the search of his automobile occurred. At that time, he posed no threat to the officers, and there was no way for him to destroy "evidence." As an aside, I note that Schultz was arrested for driving under suspension, failure to wear a seat belt, and not using his headlights. In relation to these offenses, what evidence could possibly be destroyed?
 {¶ 57} Chief Justice Moyer had further concerns with the reasoning of the Murrell majority, as he stated:
 {¶ 58} "The majority, stating no special justification for adopting the Belton brightline rule, contends that `concerns about a possible lack of probable cause to conduct a search in aBelton situation are eased by the fact that probable causemust have been present to arrest the occupant of the vehicle in the first place.' (Emphasis sic.) In my view, we need a more persuasive reason to justify the automobile search."[19]
 {¶ 59} I wholeheartedly agree with the Chief Justice. Justifying a search because the police "must have" had probable cause to arrest the suspect does not adequately protect the individual's Fourth Amendment rights. Probable cause to arrest is not necessarily equivalent to probable cause to conduct a warrantless search. Secondly, the crime a suspect is arrested for may not necessarily be related to the subsequent search. As observed by the Chief Justice:
 {¶ 60} "[T]he facts in Belton were significantly different from those in Brown and the case at bar. In Belton the police officer had probable cause to search the vehicle after the arrest because the arrest was based on probable cause that there was marijuana in the vehicle. The vehicle search therefore flowed directly from the arrest.
 {¶ 61} "However, in Brown, the arrest was for driving under the influence of alcohol. The probable cause that the officer possessed to make the arrest had no connection to the contents of the vehicle. In the case at bar, the connection is even more difficult to make. [Murrell] was arrested for failure to pay child support. There was no connection between the reason for the arrest and the contents of the automobile."[20]
 {¶ 62} In Brown, the officer found LSD in a small wooden box in the glove compartment.[21] In Murrell, the officer found cocaine in a small cloth bag.[22] As Chief Justice Moyer noted, neither of the arrests were related to the items found as a result of the search. Likewise, in the instant matter, Schultz was arrested for various traffic offenses, none of which are in any way connected to the cell phones and business cards seized by the police.
 {¶ 63} Finally, even applying the Murrell holding, the results of the instant search should be suppressed. First, the facts of this case are readily distinguishable from those ofBelton, Brown, and Murrell. In those cases, the items found during the search were drugs, which are immediately incriminating. However, in this case, the items seized were not incriminating. Today, I presume the vast majority of people travel with either a cell phone or a business card.
 {¶ 64} A search of an automobile under the search incident to arrest exception must be a contemporaneous incident of the arrest.[23] The police officer conceded that there is nothing illegal about cell phones or business cards. However, subsequent to the search, the police called the number on the business card, and the cell phone rang. The police officer admitted this was part of an "investigation." As such, any reasonable exception to the search warrant requirement had long since expired.
 {¶ 65} The trial court erred when it overruled the motion to suppress. Therefore, I must respectfully dissent.
[4] State v. Chatton (1984), 11 Ohio St.3d 59.
[5] Id. at 63, citing Deleware v. Prouse (1979),440 U.S. 648.
[6] (Citations omitted.) State v. Bevan (1992),80 Ohio App.3d 126, 129; State v. Foster (1993), 87 Ohio App.3d 32,40-41.
[7] State v. Bevan, 80 Ohio App.3d at 130.
[8] See State v. Correa (1995), 108 Ohio App.3d 362, 368;State v. Gonyou (1995), 108 Ohio App.3d 369, 372.
[9] (Internal citations omitted.) South Dakota v. Opperman
(1976), 428 U.S. 364, 369.
[10] Id. at 379-380 (Powell, J., concurring).
[11] Coolidge v. New Hampshire (1971), 403 U.S. 443, 509-510
(Black, J., concurring and dissenting).
[12] (Emphasis added.) State v. Caponi (1984),12 Ohio St.3d 302, syllabus.
[13] State v. Murrell, 94 Ohio St.3d 489, 2002-Ohio-1483.
[14] Id. at syllabus, citing New York v. Belton (1981),453 U.S. 454, and State v. Brown (1992), 63 Ohio St.3d 349.
[15] State v. Brown, 63 Ohio St.3d at 352.
[16] Id., fn. 3, quoting California v. Greenwood (1988),486 U.S. 35, 43.
[17] State v. Brown, 63 Ohio St.3d at 353; see, also, Chimelv. California (1969), 489 U.S. 35.
[18] State v. Murrell, 94 Ohio St.3d at 497 (Moyer, C.J., dissenting).
[19] Id. at 499.
[20] (Emphasis in original.) Id.
[21] State v. Brown, 63 Ohio St.3d at 349.
[22] State v. Murrell, 94 Ohio St.3d at 489-490.
[23] Id. at syllabus.