OPINION.
{¶ 1} Defendant-appellant Rahva Harris was convicted of nonsupport of dependents, a felony of the fourth degree.[1] He was also convicted of having a weapon while under a disability, a felony of the third degree.[2] He was also convicted of trafficking in cocaine as a felony of the fifth degree; trafficking and possession of cocaine as a felony of the first degree; forgery as a felony of the third degree; and possession of criminal tools as a felony of the fifth degree.[3] He was sentenced to a total of 21½ years in prison.
 {¶ 2} Harris appeared before the trial court in cases B-0410008 and B-0502023 and entered a plea of guilty to one count of nonsupport and one count of having a weapon while under a disability. In exchange for that plea, he was to receive an agreed sentence of one year in prison. He was released from custody at that time and allowed to remain free on a recognizance bond until sentencing. He was instructed by the trial court that he would not receive the agreed sentence if he failed to appear for sentencing or failed to "stay out of trouble."
 {¶ 3} Rather than staying out of trouble, Harris chose to engage in the conduct that resulted in the indictment in case B-0505687. Within weeks of entering his plea, according to law enforcement, Harris sold crack cocaine to a confidential informant. Because Harris had exited from a residence at 1750 Denham in Cincinnati, sold the crack in front of that residence, and returned inside immediately, Cincinnati police officers sought a search warrant for the property. The search warrant sought to retrieve evidence of drug trafficking and relied on the sale and the information provided by the informant. *Page 3 
 {¶ 4} When law enforcement personnel prepared to execute the search warrant, they initiated a traffic stop of Harris as he was driving to the property. The officers knew that the license plate on the vehicle Harris had been driving for the previous two weeks was expired, and they stopped the vehicle for that reason. After he was stopped, a search of his driving record revealed that his operator's license was suspended. When the officer issuing the citations asked Harris for his identification, he gave the officer a false name and social security number. Since the officer knew the information was false, Harris was immediately arrested for falsification. After Harris was handcuffed and placed in a police cruiser, the officer performed a cursory search of the passenger compartment of Harris's vehicle. As a result of that search, plastic baggies and a digital scale were found in the glove box.
 {¶ 5} Harris and the vehicle were transported to the residence on Denham where the search warrant was executed. In the premises, law enforcement found a small amount of crack cocaine. More significantly, however, the officers also found $386,500 in counterfeit currency — in varying stages of completion and of varying quality. The police also found a color photocopier and stock paper used in creating the counterfeit currency. Harris admitted that he had generated the currency. He told police that he was making the currency for two other individuals who had promised to pay him. He denied having used any of it.
 {¶ 6} During the search of the home, officers used a canine. After the canine had left the residence, it was taken around the vehicle. The dog alerted the officers to a large quantity of crack cocaine in the rear wheel well. *Page 4 
 {¶ 7} Five months after his arrest and indictment for the new charges of drug trafficking,[4] drug possession,[5] forgery,[6] and possession of criminal tools,[7] Harris filed a motion to withdraw his guilty plea in the weapon-under-disability case. The trial court denied the motion after a hearing. Harris filed a motion to suppress the evidence seized from the residence on Denham and the evidence seized from his vehicle. The trial court denied that motion as well. Harris was tried for the charges in the new case and convicted on all counts. Notably, the first count of the indictment was amended from trafficking in cocaine to possession of cocaine.
 The Trial Court Properly Denied the Motion to WithdrawPlea {¶ 8} In his first assignment of error, Harris argues that the trial court abused its discretion when it denied his motion to withdraw his guilty plea. We disagree.
 {¶ 9} The factors to consider when determining whether there was an abuse of discretion are (1) whether the accused was represented by highly competent counsel; (2) whether the defendant was afforded a complete Crim.R. 11 hearing before entering the plea; (3) whether the trial court conducted a full and impartial hearing on the motion to withdraw the plea; (4) whether the trial court gave full and fair consideration to the motion; (5) whether the motion was made within a reasonable time; (6) whether the motion set out specific reasons for the withdrawal; (7) whether the defendant understood the nature of the charges and the possible penalties; (8) whether the defendant was possibly not guilty of the charges or had a complete defense to the charges; and (9) whether the state would have been prejudiced by the withdrawal.[8] *Page 5 
 {¶ 10} In this case, the factors weigh against finding an abuse of discretion. While Harris argues that the motion was filed "seven months prior to sentencing," this was only because the sentencing had to be postponed because of the new charges. The motion was actually filed well after the original sentencing date and, more importantly, after Harris was arrested for the offenses in case B-0505687.
 {¶ 11} Harris did not seek to withdraw his plea until he had committed a new offense and realized that he was going to receive a harsher sentence because he had broken the agreement he had with the trial court not to commit a new offense while awaiting sentence. A change of heart or a mistaken belief about a plea is not a reasonable basis for a trial court to permit the defendant to withdraw his plea.[9] Moreover, a defendant generally is not allowed to withdraw his plea prior to sentencing just because he is made aware that he is going to receive a longer sentence than he anticipated when he entered the plea.[10]
 {¶ 12} Therefore, Harris's first assignment of error is overruled.
 The Trial Court Properly Denied the Motion to Suppress {¶ 13} In his second assignment of error, Harris argues that the trial court erred as a matter of law when it denied his motion to suppress. This assignment assails both the search of the residence and the search of the vehicle. As each presents unique issues to resolve, we address them separately.
 {¶ 14} We begin by examining the search of the Denham residence. Harris argues that the informant's description of a drug sale outside the residence was *Page 6 
insufficient to support a reasonable belief that contraband would be found in the home. We disagree.
 {¶ 15} According to the affidavit, the confidential informant was searched immediately prior to being sent to the residence. When the informant arrived, Harris emerged from the residence, sold crack cocaine to the informant, and immediately reentered the residence. The affidavit indicated that the transaction had occurred within 72 hours, and that it had occurred "under the surveillance of the affiant and other [police officers]." The informant had "proven reliable" in the past. While Harris argues that the officers were really investigating the counterfeiting operation and that the drug buy was a pretext, the fact remains that the affidavit indicated that Harris was selling drugs from the house.
 {¶ 16} We next address the argument that the trial court should have suppressed the evidence found during the vehicle search. Harris argues that the initial stop of the vehicle Harris was driving was improper, thus tainting his arrest. And he insists that even if the arrest was proper, the search of the vehicle was improper. We disagree.
 {¶ 17} In this case, Harris was pulled over because his license plate was expired. While the officer admitted that the stop was pretextual, this did not render the stop improper as long as the reason for the stop was valid.[11] There was no dispute that Harris was actually driving a vehicle with an expired license plate. Therefore, the stop was proper.
 {¶ 18} Harris argues that, even if the stop was proper, the search was not. We disagree. After the vehicle was stopped, Harris gave the officer false information. This *Page 7 
decision resulted in his arrest for falsification. The officer handcuffed Harris and placed him in the back seat of a police cruiser. Once Harris was in the cruiser, the officer performed a search of the passenger area of his vehicle. In the glove box, the officer found the digital scale and baggies.
 {¶ 19} Harris argues that this search violated the principle announced in State v. Brown.[12] In that case, the court held that "a police officer may not open a small, closed container found inside an automobile's glove compartment solely as a search incident to the driver's arrest for a traffic violation, after the officer has the suspect — and sole occupant of the vehicle — under control in the police cruiser."[13] While the syllabus holding in Brown would comport with Harris's argument, the Ohio Supreme Court overruled that decision five years ago.[14] In doing so, the court concluded that "[w]hen a police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."[15]
 {¶ 20} The facts in the Murrell decision are instructive. In that case, a Cincinnati police officer stopped the defendant for speeding.[16] After checking for information, the officer learned that there was a warrant for the defendant's arrest for nonpayment of child support.[17] The officer arrested the defendant, handcuffed him, and placed him in the back seat of the police car.[18] After the defendant had been placed in the cruiser, the officer "then proceeded to search appellant's vehicle."[19] He found a *Page 8 
small cloth bag, opened it, and discovered drugs.[20] The court held that the search did not violate the Fourth Amendment to the United States Constitution or Section 14, Article I of the Ohio Constitution.[21]
 {¶ 21} We find the action of the officer in this case — looking in the glove box after handcuffing Harris and placing him in the cruiser — sufficiently similar to opening the cloth bag in Murrell to have made the present search permissible under the rule announced in that decision.[22] For these reasons, we hold that there was a proper search of the vehicle incident to Harris's arrest.
 {¶ 22} Having considered both prongs of Harris's second assignment of error and rejected the arguments under each, we conclude that the second assignment of error lacks merit.
 Harris's Convictions were Proper {¶ 23} In Harris's third assignment of error, he argues that his convictions for trafficking and possession of cocaine, forgery, and possession of criminal tools were against the weight of the evidence or were based on insufficient evidence. We agree in part.
 {¶ 24} In a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt.[23] In a challenge to the weight of the evidence, we must review the entire record, weigh the evidence, consider the credibility of the witnesses, *Page 9 
and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[24]
 {¶ 25} Harris first argues that he should not have been convicted of possession or trafficking in cocaine under the first three counts in case B-0505687. Harris's argument as to counts two and three is premised on the assertion that the state failed to show that Harris knew that the drugs were in the car. This argument fails. Harris was operating the vehicle, and a large quantity of crack cocaine was found in the wheel well. While he did not own the vehicle, he had been driving it for weeks. There was enough evidence presented to the jury to show that Harris had constructively possessed the drugs.
 {¶ 26} However, Harris is correct that he should not have been convicted of trafficking in cocaine under count one of the indictment. The indictment was amended to charge possession of cocaine pursuant to R.C. 2925.11(A). This amendment occurred prior to trial, the amended charge went to the jury, and the jury found Harris guilty of possession only. It seems clear that the judgment entry reciting the wrong charge was the result of a scrivener's error. Nonetheless, the case must return to the trial court so that the entry can be corrected to reflect the proper offense for count one.
 {¶ 27} Harris also argues that his conviction for forgery was improper. He argues that the state failed to show that he had possessed the counterfeit currency "with purpose to utter" it, and that the value of the counterfeit currency was greater than $100,000. We reject both arguments. First, the fact that Harris told police that he did not intend to use the currency did not require the jury to believe that he did not intend to utter it. As to the argument that less than $100,000 of the currency was passable, a *Page 10 
Secret Service agent testified that he had seen lower-quality bills passed. He also testified that the total amount of counterfeit currency involved was $386,500. The jury received all this evidence and was in the best position to decide how much of the currency was passable. We will not second-guess its factual findings in this regard.
 {¶ 28} Finally, Harris challenges the conviction for possession of criminal tools — the counterfeit currency — because the state failed to show that he had the currency with the purpose to use it criminally. It is difficult to imagine what lawful purpose could have been served by over $350,000 in counterfeit currency. There was certainly enough circumstantial evidence to support a finding that Harris had possessed the phony money to use it criminally.
 {¶ 29} Harris's third assignment of error is sustained in part and overruled in part.
 Conclusion {¶ 30} The decision of the trial court to deny Harris's motion to withdraw his guilty plea in B-0502023 was not an abuse of discretion. The realization that he faced significantly more prison time because he had committed new crimes while awaiting sentencing did not justify allowing the withdrawal. Further, the trial court properly denied the motion to suppress the evidence seized in the home, as the affidavit provided a sufficient showing that contraband was likely in the home. The search of the glove box was proper because Harris was properly arrested when he gave police false information regarding his identity. Once Harris was arrested, the officer was entitled to search the passenger area and the glove box. Finally, Harris's convictions for drug trafficking, drug possession, forgery, and possession of criminal tools were based upon sufficient evidence and were not against the weight of the evidence. The conviction for *Page 11 
trafficking in cocaine under count one in case B-0505687, however, was improper because that count had been amended to charge possession only.
 {¶ 31} Therefore, the judgment of the trial court is affirmed in all but one respect. We reverse the conviction for trafficking in cocaine under count one in case B-0505687 and remand this case to the trial court for the entry of a judgment convicting Harris of possession of cocaine, a fifth-degree felony.
Judgment accordingly.
HlLDEBRANDT, P.J., and SUNDERMANN, J., concur.
[1] B-0410008.
[2] B-0502023.
[3] B-0505687.
[4] R.C. 2925.03(A)(1) and 2925.03(A)(2).
[5] R.C. 2925.11(A).
[6] R.C. 2913.31(A)(3).
[7] R.C. 2923.24(A).
[8] State v. Motley, 1st Dist. Nos. C-040430 and C-040431,2005-Ohio-2450, ¶ 6, citing State v. Jefferson, 1st Dist. No. C-020802, 2003-Ohio-4308, ¶ 7.
[9] State v. Lambros (1988), 44 Ohio App.3d 102, 103,541 N.E.2d 632.
[10] State v. Uribe (Mar. 5, 1999), 2nd Dist. No. 17044, citingState v. Lambros (1988), 44 Ohio App.3d 102, 541 N.E.2d 632.
[11] See United States v. Whren (1996), 517 U.S. 806, 819,116 S. Ct. 1769; Dayton v. Erickson, 76 Ohio St.3d 3, 1996-Ohio-431,665 N.E.2d 1091, syllabus.
[12] (1992), 63 Ohio St.3d 349, 588 N.E.2d 113.
[13] Id. at syllabus.
[14] State v. Murrell, 94 Ohio St.3d 489, 2002-Ohio-1483,764 N.E.2d 986.
[15] Id. at syllabus.
[16] Id. at 489.
[17] Id.
[18] Id.
[19] Id.
[20] Id.
[21] Id. at 496.
[22] See State v. Mackey, 9th Dist. No. 05CA0029, 2005-Ohio-5109.
[23] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[24] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541. *Page 1