CITY OF CENTERVILLE, APPELLEE, *v.* SMITH, APPELLANT.

(No. 4304—Decided October 19, 1973.)

Mr. *Robert N. Farquhar*, city attorney, and Mr. *Robert L. Nugent*, for appellee.

Mr. *Kurt R. Portmann*, Public Defender Project, for appellant.

HOLMES, J. This matter involves an appeal of a judgment of the Municipal Court of Kettering, finding the defendant guilty of the possession of amphetamines—a violation of R. C. 3719.24 (D). Also, defendant appeals from the Municipal Court's denial of defendant's motion to suppress evidence.

The background facts of the arrest of this defendant

and the seizure of the evidence in question are as follows:

On April 26, 1973, one Detective Shaneyfelt of the Centerville, Ohio, police went to a certain residence in Kettering in order to investigate a grand larceny, not of concern here, which had taken place sometime previously at such residence. Earlier, on the morning of such investigation, the detective had been informed by the Kettering Police that one Ronald Workman was wanted for questioning in connection with a robbery and that he drove a black Chevrolet. Also, the detective had been informed that three individuals, Gary Herbst, Gary Reese and Robert Katronis, had outstanding Kentucky warrants against them. The detective was given permission to enter the house, and upon entering he noticed a strong smell of marijuana. At that time he was introduced to an individual by the name of Mr. Ronald Workman. While being conducted through the house, Detective Shaneyfelt noticed a number of pairs of boots sitting on the floor which aroused the thought in Detective Shaneyfelt that there were others unaccounted for in the household.

After the detective left the house, he took up surveillance some distance therefrom, and radioed for other officers. While waiting, he saw the defendant, the appellant herein, come out of the house and remove a white bag from the trunk of the black Chevrolet. He watched the defendant proceed back into the house. When the other officers arrived, they all went back and entered the house with the permission of the occupants. They immediately arrested a number of the occupants who were in the living room for possession of marijuana. Upon a further search of the house, Robert Katronis was found in the first bedroom, and brought to the living room, and the defendant, Smith, was found in the bathroom using the plumbing facilities. Smith was then brought to the living room and placed under arrest.

It appears that all persons who were either found in the living room, originally, or elsewhere in the house, were arrested and handcuffed, and then guarded by two police

officers in the living room. While all of the subjects remained handcuffed in the living room, guarded by the two officers, all of the other police officers searched the entire house, including the bedrooms, the kitchen, the attic, and the garage.

From the record it would appear that the search continued on a rather widespread basis, in the master bedroom and in the bathroom where Mr. Smith had been found. The officers opened drawers in bureaus, physically moved the contents of the drawers so that they might view any possible quantity of drugs or anything that would be normally found in the area. A suitcase was found in the kitchen and the officers proceeded to go through such suitcase, removing the clothes and other contents therefrom. Detective Shaneyfelt searched the closet in the master bedroom which was immediately off of the bathroom, where Mr. Smith was found, and while looking therein he saw a white bag on the shelf. He pulled the bag down from the shelf and found its contents to be amphetamines. The defendant was thereafter charged with possession of amphetamines. The motion to suppress this evidence, made before trial, and the denial of such motion followed. The defendant was thereafter tried and convicted of the charge.

Defendant appeals, setting forth basically one assignment of error. It, in effect, is that the search and seizure conducted herein violated his rights guaranteed under the Fourth and Fourteenth Amendments of the Constitution of the United States. Such basic assignment of error is set forth in defendant's brief, by way of a three-pronged argument which we set forth as follows:

"A. Where the police officers do not have a search warrant, but nonetheless search the entire house, check drawers, cabinets, open suitcases and go through clothing, the police officers have conducted a general search prohibited by the Fourth and Fourteenth Amendments.

"1. General searches are prohibited by the Constitution.

"2. The police cannot use self-protection to rationalize a general search.

"B. Where a police officer cannot see the contents of

a bag, a seizure of the contents cannot be in plain view of the officer.

"C. Where no one was arrested in the room, evidence seized from a closet shelf cannot be seized pursuant to an arrest."

With these assertions we are in agreement. Under the Fourth Amendment, involved herein, a warrant is required for all searches and seizures unless one of a number of exceptions are found to be present. The Fourth Amendment reads as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Among those exceptions referred to previously, where a valid warrant is not required for a search or seizure, are searches and seizures incident to a lawful arrest. Also, there may be a limited search without a warrant for such searches incident to a detention upon probable cause to arrest, without a formal arrest, for the purpose of preserving highly destructible evidence. Also, there may be a limited protective search; a plain view seizure without a warrant; or a search and seizure where there has been a hot pursuit of a fleeing felon. There may also be a seizure where there are goods in the process of being destroyed or goods about to be removed. Additionally, there may be a search and seizure without a warrant where a prompt inspection is called for in the case of an emergency. Moving vehicles also provide an area where there might be, in certain instances, searches and seizures in the absence of a warrant.

There are, of course, others, but the foregoing are the main exceptions to the aforestated general rule that the Fourth Amendment secures the individual's right of privacy, and the law excludes evidence acquired contrary to the observance of such right, and in the absence of such exceptions a warrant is required for all searches and seizures.

In the matter before us, it is admitted that the defendant was arrested on the premises and such arrest was without a warrant. It is also admitted that the search for and seizure of the bag of amphetamines was made without a search warrant. It would appear from the facts that there was a lawful arrest as far as those who were originally found in the living room are concerned, they being either in the actual or constructive possession of marijuana. However, there appears to be a grave question as to whether there was probable cause for the arrest of the defendant in that no drugs were found in his actual possession. Equally questionable is whether any drugs were found in his constructive possession at the time.

In any event, arguendo, let us assume that there was a lawful arrest of those originally approached in the living room, and that the search was based upon such lawful arrest. The case law tells us that the necessity of a search and seizure, following a lawful arrest, is basically that of the protection of the arresting officer—to find and prevent the use of weapons which might be harmful to him. Additionally, such search and possible subsequent seizure is for the purpose of preserving any evidence that might be destroyed by the person apprehended.

The case law is rather clear that any such search attendant to a lawful arrest must be limited in its nature. *Chimel* v. *California* (1969), 395 U. S. 752, holds that if the search is not contemporaneous with the arrest, or if it goes beyond what is under the immediate control of the defendant, it is not valid. A search incident to a valid arrest must be confined to the person and the area from within which he might have reached weapons or destroyed evidence.

The defendant in the instant case was taken from the bathroom to the living room area, and thereafter the police officer went back to the bedroom which adjoined the bathroom for the purposes of his search. It cannot reasonably be argued that the element of the officer's self-protection was involved in order to justify the warrantless search. Also, it cannot me reasonably argued that such search and seizure was with the aim of preventing the conceal-

ment or destruction of evidence in the closet.

*Kerr* v. *California* (1963)), 374 U. S. 23, held that police officers may, in conjunction with a lawful arrest, or in the process of a search incident to a lawful arrest, seize evidence which is in "plain view." The plain view exception applies in situations where the police have a warrant to search a specific area for specified things, and in the course of the search come upon some article of an incriminating character. This exception may also apply where the initial search is supported by one of the recognized exceptions to the warrant requirement, such as a hot pursuit, or a search incident to an arrest. However, the plain view exception is limited by the rule set forth previously in *Chimel*, to the effect that the search must be restricted to the circumstances of the particular matter at hand. In other words, the search must be reasonably related in scope to the circumstances which justified the interference in the first place.

In the present matter, the defendant was taken from the bathroom, where he was using the facilities, to the living room, where he was placed under arrest. The record will show that the bathroom and the closets and medicine chest therein were thoroughly searched, subsequent to the defendant's removal, and the need to further examine the closet in the adjoining bedroom for the purpose of uncovering either weapons or contraband incident to the defendant's arrest was doubtful. So, the valid presence of the officer in the bedroom and in the closet, in order for the plain view theory to be applicable, is highly questionable.

However, even if it might be conceded that the officer was properly in the bedroom and properly was peering into the closet, there is further doubt that the plain view doctrine as such would be applicable, in that all that appeared was the plain white bag. Be it the same type as was seen by the officer being carried in from the Chevrolet automobile by the defendant, the plain white bag in and of itself does not give rise to a reasonable basis for thinking that it contained amphetamine, or any other type of drug. Such is dissimilar from the facts in the case of *Ker* v. *California*,

*supra*, in which the police officers viewed marijuana on the kitchen counter and seized it.

For all of the foregoing, we hold that the trial court erred in overruling the motion to suppress the evidence, and erred in admitting such. Therefore, the judgment finding the defendant guilty of the charges herein is hereby reversed, and this matter is remanded to the Municipal Court of Kettering for further proceedings according to law.

*Judgment reversed.*

SHERER and CRAWFORD, JJ., concur.

HOLMES, J., of the Tenth Appellate District, sitting by designation in the Second Appellate District.