The STATE of Ohio, Appellant,

v.

MYERS, Appellee.

[Cite as *State v. Myers* (1997), 119 Ohio App.3d 376.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15910.

Decided April 25, 1997.

*Mathias H. Heck, Jr.,* Montgomery County Prosecuting Attorney, and *Karen L. Sollars,* Assistant Prosecuting Attorney, for appellant.

*Lynn Koeller,* Montgomery County Public Defender, and *Brian Weaver,* Assistant Public Defender, for appellee.

---

GRADY, Judge.

The state of Ohio appeals from an order suppressing evidence of drugs that were seized by police from defendant Peggy Myers's bedroom.

On January 24, 1996, at 11:15 p.m., Dayton Police Officers Richard Kraft and Steve Bergman were dispatched to a residence at 1524 Viola Street on a complaint of a burglary in progress. Upon arrival, the officers saw that glass had been broken out of the front door. They also observed one male and one female, who was later identified as Peggy Myers, inside the residence.

The officers knocked on the front door and advised the two people inside that they were there on a reported burglary. The male told the police officers to come inside. When the officers entered, Peggy Myers stated that "they" wouldn't let her in, so she had broken the door glass with a brick and gained entry in that way. The owner of the residence, Michael Reynolds, then came downstairs, and upon seeing the damage he told police that he wished to prosecute Myers.

Myers became angry at Reynolds and went toward him. Officer Bergman restrained Myers while Officer Kraft escorted Reynolds to a different room. Myers was able to see Reynolds, and she attempted to pull away from Officer Bergman to go after Reynolds. Myers appeared to be intoxicated; her speech was slurred, her eyes were bloodshot, and she smelled of alcohol. When Myers raised her hand to Officer Bergman, as if to strike him, he arrested Myers for disorderly conduct and handcuffed her behind her back.

At some point prior to her arrest Myers informed the officers of her identity and told them that she rented a room in that residence. Michael Reynolds, the owner-landlord, confirmed that information. Myers's purse was lying on a table and Officer Kraft searched it, looking for a photo identification. Inside the purse Officer Kraft discovered a straw, four inches in length, which caused him to suspect that Myers might be using drugs. Officer Kraft asked Myers if she used cocaine. Myers responded, "no."

Officer Kraft then asked Reynolds where Myers's room was located. Reynolds directed Officer Kraft to a room on the second floor. From the hallway Officer Kraft shined his flashlight into Myers's room, the door to which had been left open. On Myers's dresser, some ten feet away, Officer Kraft observed a mirror,

a razor blade, and a plastic baggie with white powder residue. Officer Kraft went back downstairs and told Myers what he had seen and that he was going to charge her with possession of drug paraphernalia.

After advising Myers of her *Miranda* rights, Officer Kraft asked Myers if there was any cocaine in her room. According to Officer Kraft's later testimony, Myers stated that there was a small amount of cocaine in her jewelry box on her dresser, and that police could go get it. Officer Bergman then went upstairs, entered Myers's room, and retrieved the cocaine from the jewelry box.

Myers was taken outside and placed in a police cruiser. Other police officers arrived on the scene. Almost one hour after Officer Bergman seized the cocaine from Myers's room, Myers signed a consent to search. A thorough search of Myers's room was then conducted by police.

Myers was subsequently indicted on one count of drug abuse, in violation of R.C. 2925.11. Prior to trial, she filed a motion to suppress the cocaine recovered by police from her jewelry box. Following a hearing, the trial court granted Myers's motion to suppress. The trial court concluded that the search of Myers's purse by police was unlawful and that it tainted the subsequent recovery of cocaine from her room, stating:

"The Court finds that there was no legal reason for Officer Craft to search the Defendant's purse in her own residence when she was being charged with disorderly conduct. That illegal search led to other violations of the Defendant's constitutional rights all of which ended with her arrest for drug abuse."

Pursuant to Crim.R. 12(J) and R.C. 2945.67, the state of Ohio has timely appealed to this court from the trial court's order suppressing the evidence in this case.

### First Assignment of Error

"The trial court erred in finding that the search of defendant's purse was in violation of her constitutional rights because it was a valid search incident to a lawful custodial arrest."

### Second Assignment of Error

"The trial court erred in finding the discovery of the drug paraphernalia in Myers's room was unconstitutional because it was sighted in plain view during a routine search by the officers after obtaining consent to search by the owner of the house."

The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution require police to obtain a warrant based upon probable cause before they conduct a search. Warrantless searches are *per se*

unreasonable, subject only to a few well-recognized exceptions. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. One such exception to the warrant requirement is a search incident to a lawful custodial arrest. *Chimel v. California* (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685.

■ The purpose of the search incident to arrest exception as it has developed is twofold: to deny an arrestee access to any weapons, thereby protecting the arresting police officers, and to deny an arrestee access to any evidence which he might conceal or destroy. *Id.*

Pursuant to their authority to conduct a search incident to arrest, police are authorized to conduct a full search of the arrestee's person and the area within his immediate control, that is, the area from which he might be able to reach or grab a weapon or evidence. *Id.* This court has long recognized that once an arrestee is neutralized by police, by handcuffing for example, the extent of police authority to search the area in which the person was arrested diminishes because he then no longer has an ability to reach or grab a weapon or some other item from that area. *Centerville v. Smith* (1973), 43 Ohio App.2d 3, 72 O.O.2d 155, 332 N.E.2d 69.

During the development of the exception for a search incident to arrest, the United States Supreme Court extended that exception to authorize the search of an automobile incident to the arrest of one of the car's occupants. In so doing, the United States Supreme Court greatly relaxed *Chimel's* requirement that the search incident to an arrest be confined to the arrestee's person or the area from which he might be able to gain access to a weapon or destructible evidence. *New York v. Belton* (1981), 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768.

Over a decade after *Belton,* the Ohio Supreme Court in *State v. Brown* (1992), 63 Ohio St.3d 349, 588 N.E.2d 113, rejected *Belton* and utilized the Ohio Constitution as a separate, independent basis to reassert *Chimel's* limitation confining a search incident to arrest to the arrestee's person and the area within the arrestee's control. This court has acknowledged that the effect of the Ohio Supreme Court's decision in *Brown* was to reaffirm, for purposes of Ohio jurisprudence, *Chimel's* strict limitations on the search incident to arrest exception. *State v. Rodriguez* (1992), 83 Ohio App.3d 829, 615 N.E.2d 1094.

■ The state argues that the search of Myers's purse by police was a valid search incident to a lawful custodial arrest. We agree that her arrest and custody were lawful, but we agree with the trial court that those facts did not authorize the search of her purse.

Myers was placed under arrest for disorderly conduct as a result of her persistent efforts to get at Michael Reynolds and her resistance to Officer Bergman's attempts to restrain her. According to Officer Kraft, he searched Myers's purse because he was looking for a photo identification. Myers had previously identified herself to police, however, and Reynolds had confirmed that information. Thus, we are at a loss to understand why the officers needed to have a photo identification of Myers at that point in time.

■ More critical is the fact that at the time police searched Myers's purse she was under arrest, and under Officer Bergman's physical control, her hands cuffed behind her back. Myers's purse may have been in her presence in the sense that it was lying on a table in the same room where Myers was held by police. However, Myers had no access to the purse; she was clearly unable to reach or grab the purse and thereby gain possession of a weapon, evidence, or anything else in it. Accordingly, because the purse was not within the area of Myers's control, the search of her purse cannot be justified as one incident to her arrest. *State v. Jones* (1996), 112 Ohio App.3d 206, 678 N.E.2d 285. See, also, *State v. Hines* (1993), 92 Ohio App.3d 163, 634 N.E.2d 654; *State v. Davidson* (1992), 82 Ohio App.3d 282, 611 N.E.2d 889; *United States v. Chadwick* (1977), 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538.

The trial court was correct in concluding that the warrantless search of Myers's purse by police violated her constitutional rights to be free from unreasonable searches and seizures, and that any evidence that the state has obtained as a product of that illegal conduct must be suppressed. Clearly, that includes any evidence found inside Myers's purse, which was properly suppressed by the trial court. The suppression order also covers the cocaine and the drug paraphernalia recovered from Myers's room. However, it is not clear that Myers is entitled to have that evidence suppressed, as well.

■ With respect to the cocaine and the drug paraphernalia seized from Myers's room, the state attempts to justify that warrantless search and seizure on the basis of a written consent to search that Myers executed. A consent to search is a decision by a citizen to waive his Fourth Amendment rights. To be valid, the consent must be freely and voluntarily given. *Schneckloth v. Busta-monte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854.

■ Myers executed a written consent to search form giving police permission to search her room one hour *after* the police had already entered her room and seized the cocaine and paraphernalia. Clearly, a written consent to search cannot be relied upon to excuse the Fourth Amendment's warrant requirement where

the search and seizure that the consent purports to authorize has already taken place.

The trial court concluded that the illegal search of Myers's purse tainted the subsequent seizure of cocaine and drug paraphernalia from her room. In other words, the court viewed the evidence as derivative, or "fruit of the poisonous tree," about which the police learned as a result of their prior unlawful conduct. The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence which is subsequently discovered and derivative of that prior illegality. *Nardone v. United States* (1939), 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Secondary or derivative evidence need not be suppressed, however, where that evidence falls within one of the exceptions to the derivative evidence rule. One such exception is the independent source doctrine.

If knowledge of derivative evidence is gained from a source independent of the government's prior illegality, the derivative evidence need not be excluded. *Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319. For example, evidence that is not discovered during an initial illegal entry by police but rather is discovered subsequently pursuant to a valid search warrant issued on information not connected to the prior illegal entry is derivative evidence for which there is an independent source, and such evidence should not be suppressed. *Segura v. United States* (1984), 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599.

Officer Kraft testified that after police looked into Myers's room from the hallway and observed drug paraphernalia, they advised her that she would be charged with possession of drug paraphernalia. Myers was then advised of her *Miranda* rights. After Myers indicated that she understood her rights and was willing to waive them, police asked her if she had any cocaine in her room. Myers stated that she had a small amount of cocaine in her jewelry box, which was on the dresser in her room. On redirect examination, Officer Kraft testified that Myers told police that they could seize that cocaine. On recross-examination, Officer Kraft acknowledged that his police report contained no mention of Myers's oral consent to seize that evidence.

If Myers gave oral consent for the police officers to enter her room and seize the cocaine in her jewelry box, and if that consent was voluntary under the totality of the circumstances, her oral consent was a source that permitted seizure of the cocaine that was independent of the prior illegal police conduct. In that case, the cocaine would not be derivative evidence or fruit of the poisonous tree,

and Myers's consent would eliminate the need for a warrant. If, on the other hand, Myers did not give oral consent or if her consent was not voluntary, then the cocaine would constitute evidence derivative of the illegal search of her purse, and its warrantless seizure by police would be violative of Myers's Fourth Amendment rights. In that case evidence of the cocaine that police seized must be suppressed.

While the trial court recited in its decision some of the testimony regarding oral consent, it did not determine whether Myers did or did not give oral consent to the police to seize the cocaine and the drug paraphernalia from her room and, if she did consent, whether that consent was voluntary. The trial court suppressed the evidence seized because it was derivative evidence without deciding whether Myers had given an oral consent that created an independent basis for this search and seizure, an issue that was raised by the testimony presented at the suppression hearing. We believe that the trial court erred in that regard.

The state's second assignment of error attempts to avoid the consequences of the illegal search of Myers's purse by arguing that the drug paraphernalia was "in plain view" of Officer Kraft when he looked into Myers's room, permitting him to seize it. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. However, the trial court did not address that issue. Because it involves a fact-sensitive determination, we will overrule the assignment of error but remand the cause to the trial court to determine whether the officers were authorized to seize the drug paraphernalia they found in Myers's room under the plain view rule, or because it was included in the consent that she allegedly gave, notwithstanding their prior illegal search of Myers's purse.

The second assignment of error is overruled. The first assignment of error is overruled in part and sustained in part. The cause will be remanded to the trial court to determine whether evidence seized from Myers's room is not subject to suppression by reason of the independent source doctrine on the basis of a consent that Myers allegedly gave.

*Judgment accordingly.*

WOLFF, J., concurs.

KERNS, J., dissents.

JOSEPH D. KERNS, J., retired, of the Second Appellate District, sitting by assignment.

WOLFF, Judge, concurring.

· I concur in the opinion as it disposes of the first assignment and in the remand for further consideration. As to the second assignment, my purpose in writing separately is one of clarification. The testimony of Officer Kraft was that Myers orally consented to the seizure of the cocaine in the jewelry box on the dresser in her room. That oral consent did not extend to searching her room. Therefore, the plain view doctrine can serve only to authorize the seizure of the drug paraphernalia on Myers's dresser if the police were lawfully in Myers's room, *i.e.*, pursuant to her oral consent to enter her room to seize the cocaine in the jewelry box. The state would appear to agree that the plain view doctrine applies to justify seizure of the drug paraphernalia only if Myers consented to the entry of her room. (While the state relies on Myers's written consent as justification for the police entering her room, that reliance is misplaced. See majority opinion.)

Accordingly, if the trial court does not find that Myers orally consented to the police entering her room, then Officer Kraft's observation of the drug paraphernalia from the hallway, standing alone, would not have justified its warrantless seizure because Myers was under arrest and handcuffed, and there were thus no exigent circumstances excusing the warrant requirement. Accordingly, if the trial court does not find that Myers orally consented to the police entering her room, the drug paraphernalia, as well as the cocaine, were properly suppressed.

KERNS, Judge, dissenting.

As shown by the record, and as found by the trial court, the evidence in this case is readily susceptible of a reasonable interpretation that the drug abuse charge, as distinguished from the arrest for disorderly conduct, was completely prompted by and traceable to the unlawful and unconstitutional search of Myers's purse.

Hence, I would conclude this matter by affirming the order of the common pleas court.