OPINION
Plaintiff-appellant State of Ohio appeals from the January 21, 1999, Judgment Entry of the Stark County Court of Common Pleas granting defendant-appellee Grady Jeter's Motion to Suppress.
 STATEMENT OF THE FACTS AND CASE
On November 23, 1998, the Stark County Grand Jury indicted appellee Grady Jeter on one count of possession of cocaine in violation of R.C. 2925.11(A), a felony of the fourth degree. At his arraignment on December 4, 1998, appellee entered a plea of not guilty to the charge in the indictment. Thereafter, on January 6, 1999, appellee changed his plea and entered a plea of guilty to the crime of possession of cocaine in violation of R.C.2925.11(A). Appellee's plea was based on his acceptance into the Chance Program, a drug court program. Appellee was then placed on probation for a period not to exceed three (3) years and ordered to successfully complete the Chance Program. A Judgment Entry memorializing appellee's plea and sentence was filed on January 8, 1999. Attached to and made part of the Judgment Entry was a written Plea of Guilty. After appellee was not accepted into the Chance Program, the trial court, on January 13, 1999, granted appellee's oral motion to withdraw his guilty plea pursuant to Crim.R. 32.1. Thereafter, a hearing on appellee's Motion to Suppress, which had been filed on January 11, 1999, was held the same day. The following evidence was adduced at the hearing. During the early morning hours of October 6, 1998, Canton Police Officers Joey Gordon and Michael Reese, who were in the same cruiser, were radioed to provide backup assistance to Police Officer Spahr in the 2600 block of Cleveland Avenue, N.W. in Canton. Spahr had effectuated a traffic stop of appellee for the offense of speeding, a minor misdemeanor. When the two officers arrived at the scene, appellee was sitting in the driver's side of his car. Subsequently, at the officers' request, appellee exited his vehicle and sat on a curb while he was going through a portfolio looking for his driver's license. When appellee was unable to produce his driver's license after three to five minutes, Officer Reese had appellee walk over to Reese's cruiser. In accordance with police policy, Officers Reese and Gordon were going to place appellee in their cruiser while they checked into his identity and the status of his drivers license. Before an individual such as appellee is placed in the back of a cruiser, it is customary for the officers to perform a pat down for safety reasons. At the hearing, Officer Reese testified that appellee voluntarily consented to a pat down search for weapons. Thereafter, appellee was asked to place his hands on top of the police cruiser. Once appellee complied, Officer Reese then began patting appellee down from top to bottom. At some point during the pat down, appellee pushed off of the cruiser and told Officer Reese that he did not have to be that rough. Officer Reese then asked appellee to again place his hands on the cruiser and, once appellee complied, kicked appellee's feet apart. Reese testified that when, during the pat down, he got to appellee's chest area, appellee, who appeared nervous, "pushed off the vehicle and attempted to flee." Transcript of January 13, 1999, hearing at 25. Although Officer Reese told appellee to quit running, appellee did not comply. Appellee was stopped approximately ten yards away when Officer Reese grabbed him and dragged him down in the middle of Cleveland Avenue. Appellee was then handcuffed. While Officer Gordon testified that she arrested appellee for disorderly conduct, in fact, appellee was arrested for resisting arrest as indicated by the record of the charge. At the time appellee was handcuffed, the officers did not know whether or not appellee had a valid driver's license. A search of appellee's pockets after his arrest yielded what was later determined to be a bag of powdered cocaine in the front pocket of appellee's jacket. Appellee was charged with possessing cocaine. Subsequently appellee was also charged with speeding in violation of Canton City Ordinance Sec.333.03 and driving with an expired license in violation of Canton City Ordinance Sec. 335.01, both minor misdemeanors. At the conclusion of the hearing, the trial court took the matter under advisement. Pursuant to a Judgment Entry filed on January 21, 1999, the trial court sustained appellee's motion to suppress, holding that there was no basis for a search incident to arrest since the police did not have probable cause to arrest appellee at the time of the search. It is from the January 21, 1999, Judgment Entry that appellant prosecutes this appeal, raising the following assignment of error:
THE TRIAL COURT ERRED IN SUSTAINING THE MOTION TO SUPPRESS WHEN APPELLEE FLED FROM POLICE DURING A TERRY SEARCH AND SEIZURE AND WAS SUBSEQUENTLY ARRESTED FOR RESISTING ARREST.
 I
Appellant, in his sole assignment of error, argues that the trial court erred in granting appellee's Motion to Suppress. While both parties concur that the initial stop of appellee for speeding was legal, appellant contends that "resisting a lawful stop and frisk pursuant to Terry v. Ohio (1968), 392 U.S. 1 is sufficient to justify an arrest for the offense of resisting arrest." There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982) 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486, State v. Guysinger (1993) 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96, State v. Claytor (1993), 85 Ohio App.3d 623,627, 620 N.E.2d 906, 908, and State v. Guysinger (1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." Both the Fourth Amendment to the United States Constitution and Article I, Sec. 14 of the Ohio Constitution prohibit unreasonable searches and seizures. Under Terry v. Ohio (1968), 392 U.S. 1, once, as here, an investigatory stop of a person has been completed, an officer may conduct a limited pat-down search for weapons where he has reason to believe that he is dealing with an armed and dangerous individual, based on the specific reasonable inferences which he is entitled to draw from the facts of the case." Terry, supra. at 26. See also State v. Bobo (1988), 37 Ohio St.3d 177. The driver of a motor vehicle may be subjected to a brief Terry pat-down search for weapons where the detaining officer has a lawful reason to detain said driver in a patrol car. State v. Evans (1993),67 Ohio St.3d 405, syllabus There is a distinction, however, between a Terry pat-down or frisk and a search, which is more invasive. Both the Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution require that, before a search is conducted, the police must obtain a warrant based on probable cause. There are a number of exceptions to the warrant requirement. One of the exceptions to the warrant requirement is a search incident to a lawful custodial arrest. See State v. Brown (1992) 63 Ohio St.3d 349 and State v. Myers (1997), 119 Ohio App.3d 376, citing to Chimel v. California (1969), 395 U.S. 752. While there are a number of other exceptions to the warrant requirement, the search incident to arrest exception is the sole exception raised by appellant. As is stated above, neither appellant nor appellee challenge the initial stop of appellee for speeding. Since appellee was unable to produce his driver's license, the police had a lawful reason for detaining appellee in the police cruiser and, therefore, for subjecting him to a Terry pat-down prior to placing him in the cruiser. See Evan, supra. The issue for determination, therefore, is whether the subsequent warrantless search of appellee, namely, his pockets, was a lawful search incident to arrest. Appellee was arrested for resisting arrest in violation of R.C. 2921.33(A). R.C. 2921.33(A) states that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." A lawful arrest is an essential element of the crime of resisting arrest. State v. Thompson (1996), 116 Ohio App.3d 740. To show a lawful arrest, "the state must prove not only that there was a reasonable basis to believe an offense was committed, but also that the offense was one for which the defendant could be lawfully arrested." Id. at 743-44. In the case sub judice, appellee was not lawfully arrested for resisting arrest at the time that he resisted the officers. At the January 13, 1999, hearing, Officer Joey Gordon testified as follows: "Q. In fact, he [appellee] was arrested because he turned and ran, correct? A. Correct. Q. And he was, in fact, arrested according to your From 8 and as you reviewed it because he was resisting arrest? A. Correct. Q. What was he being charged with up to that point? What was he being arrested for up to that point? A. Nothing up to that point. Q. So he's being arrested for resisting arrest when he wasn't actually being arrested, correct? A. Correct." (Emphasis added) Transcript of Proceedings at 19-20.
In addition, Officer Reese, when asked "[w]hat violation of law did he [appellee] commit that you were placing him under arrest for that he was resisting arrest," conceded that there was no violation. Transcript of proceedings at 37-38. Clearly, appellee was never lawfully arrested for resisting arrest before he was searched after his capture by the police. However, while the officers did not have probable cause to arrest appellee for resisting arrest, we find that they did have probable cause to arrest appellee for obstructing official business in violation of R.C. 2921.31 as they intended, but failed to do. Revised Code 2921.31 provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties." A violation of R.C. 2921.31 is a misdemeanor of the second degree punishable by up to 90 days confinement. See 2921.31(B) and 2929.21. An affirmative act is required to support a finding that an individual is guilty of obstructing official business. N. Ridgeville v. Reichbaum (1996), 112 Ohio App.3d 79. In the case sub judice, we find that appellee, through his affirmative actions, has hampered or impeded the officers in their performance of their lawful duties. See State v. Collins (1993),88 Ohio App.3d 291. Specifically, appellee, pushing off of the police vehicle, fleeing the scene, and by failing to stop when directed to do so by Officer Reese took affirmative action hampering the officers in performing their duties. See State v. Collins (1993), 88 Ohio App.3d 291. Since appellant's arrest was lawful, the subject search of his person was a lawful search incident to an arrest.
Appellant's sole assignment of error is overruled. The judgment of the Stark County Court of Common Pleas is affirmed.
By Edwards, J. Gwin, P.J. and Farmer, J. concur.