This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} A, Bobby D. Jones ("Jones"), appeals a judgment of conviction and sentence on multiple drug charges from the Summit County Court of Common Pleas. We vacate the order denying the suppression of evidence and remand for further proceedings consistent with this opinion.
 I.
{¶ 2} On November 4, 2001, a City of Akron police officer, while on patrol, observed movement within a vacant business building at 1030 Kenmore Boulevard (the "building"). The officer and his partner approached the building to investigate and found no signs of a burglary. However, through a window they observed a man inside who, according to the officers, appeared to be trying to conceal himself. The police officers knocked on the window and asked the man to come out. Eventually the man did so, although only after several minutes of coaxing. When the man went to the door, he opened it, slid out, and immediately closed and locked the door behind him, and put the keys in his pocket. The officers questioned the man regarding his identity and his purpose for being in the building. While the man was searching his wallet for his identification card, one officer saw an identification card belonging to a woman; the officer reached over and pulled it from the wallet. The man was identified as the appellant, Bobby Jones, and he initially told the officers that he was there to do work for the building owner. Eventually, Jones admitted that the building belonged to him. The officers repeatedly asked for permission to enter and search the building. Each time he was asked, Jones refused to give permission for the officers to enter the building. The officers testified that Jones was breathing hard, was nervous, rude, and adamant that the officers should not enter the building. The officers, explaining to Jones that he was not under arrest, handcuffed Jones, retrieved the keys from his pocket, and entered the building.
{¶ 3} With weapons drawn, the officers searched the building and found a room containing hydroponic marijuana cultivation. Inside the room were 191 large marijuana plants growing under bright lights, each irrigated individually. There were also pieces of scrap marijuana on the floor of the building. Upon the discovery of the contraband, the officers placed Jones under arrest.
{¶ 4} The police officers left the building with Jones and called a supervisor to the scene. When the supervisor arrived, the police re-entered the building in order to dismantle and tag the hydroponic equipment and take the plants and equipment into evidence.
{¶ 5} Jones had reported to the officers that he had walked from his home on Harvey Avenue to the building, something the officers testified they disbelieved, as they had patrolled the area all evening and had not see Jones walking. Through the license plate number, the officers ascertained that Jones was the owner of a car parked in the street near the building. The officers towed the car; police protocol requires an inventory of articles contained within a vehicle prior to a tow. During the inventory of Jones' vehicle, the officers found a briefcase in the trunk. Underneath the briefcase were money wrappers for bundles of one thousand dollars. Also inside the vehicle were empty trash bags and blocks of material used for seed germination.
{¶ 6} After the arrest, the officers searched Jones' pockets and found an electric bill for the building, showing Robert L. Goodwin of Harrison Avenue as the responsible party. There was also a bank statement in Jones' pockets, indicating a balance of fifty four thousand dollars. Jones' wallet contained several hundred dollars as well.
{¶ 7} At the police station, the officers informed Jones of his Miranda rights and interviewed him. Jones admitted growing the marijuana for his own medicinal purposes and stated that there was ten thousand dollars inside the briefcase. The officers requested that the briefcase be retrieved from the towed vehicle so that the money could be safeguarded. When Jones was finally booked into jail, he gave his residence address as 567 Harvey Avenue.
{¶ 8} A detective from the Akron police narcotics division assumed control over the investigation of Jones. The detective obtained a search warrant for the briefcase and discovered that it actually contained forty three thousand dollars. The detective testified that an informant had independently told the detective that there was a father-son duo on Harvey Avenue who were selling marijuana from two residences across the street from one another. The informant had said that the father was a white male named Bobby, but the informant did not know the addresses involved. The detective testified that prior to Jones' arrest, he had attempted to ascertain the addresses by observing activity on the street. In light of the cash, and information he had previously received from the informant, the detective obtained a search warrant for the residence that Jones claimed was his residence: 567 Harvey Avenue.
{¶ 9} When police executed the search warrant at 567 Harvey Avenue, two males and one female occupied the house. The female was Jones' wife, and one of the two males was his son. A search of the residence turned up scales, 5,000 grams of marijuana, cultivation materials and grow lights, firearms, and marijuana stems. The two males were appropriately charged. One of the males advised the police that Jones did not live at 567 Harvey Avenue, but lived across the street at 566 Harvey Avenue. Likewise a neighbor advised police that they were searching the wrong house, and that Jones lived at 566 Harvey Avenue.
{¶ 10} Therefore, the police obtained a search warrant for 566 Harvey Avenue. Inside 566 Harvey Avenue, police found 101 live marijuana plants, grow lights, heat lamps, miscellaneous personal papers in Jones' name, and trash bags full of marijuana stems. Included in the personal papers was evidence that Jones also owned a property at 1935 Second Street. A search warrant was obtained for that address, which was discovered to be vacant. Nevertheless, police investigators reported finding evidence that it had once housed a marijuana crop.
{¶ 11} From the building and the two Harvey Avenue residences, police seized around 16,000 grams of marijuana. In addition to the criminal indictment, the prosecution sought forfeiture of the three real properties from which the marijuana was recovered, the money in the briefcase, the wallet, and the bank account, as well as the car that was towed at the time of the initial arrest.
{¶ 12} Prior to trial on his criminal charges, Jones moved to suppress all evidence from the building, as well as the other searches, on the grounds that the initial search of the building was illegal.[1]
During the suppression hearing, the police officers testified that they deemed a warrantless entry to be necessary because they initially thought a burglary was in progress. In addition, because Jones had a woman's identification card in his wallet, and because he was so nervous and adamant, they believed he may have been holding someone, perhaps a woman or a child, against their will inside the building. The testimony revealed that the woman's identification belonged to Jones' wife. Also at the hearing, the narcotics detective conceded that the search warrants for the briefcase, and the Harvey Avenue properties, resulted from information garnered initially at 1030 Kenmore when the building was first searched and Jones was arrested. The detective also stated that the only independent information came from the unnamed informant who knew of the father-son operation somewhere on Harvey Avenue. The trial court denied the motion to suppress.
{¶ 13} A jury found Jones guilty of four counts on the indictment. The trial court sentenced Jones to concurrent sentences and fines and ordered forfeiture of any interest in 1030 Kenmore Boulevard, 567 and 566 Harvey Avenue, the $54,000 in the bank account, and the $43,850 in the briefcase. The trial court released Jones on an appeal bond, and ordered all seized contraband and personal property to be held pending the outcome of the appeal. Jones timely filed the appeal, raising two assignments of error.
 II. Assignment of Error No. 1
{¶ 14} "THE FAILURE OF THE TRIAL COURT TO SUPPRESS THE EVIDENCE GAINED THROUGH THE TWO SEPARATE ENTRIES INTO 1030 KENMORE BOULEVARD IS NOT IN ACCORDANCE WITH LAW IN THAT THE ENTRIES, SEARCH AND SEIZURE OF PROPERTY VIOLATED APPELLANT'S RIGHTS UNDER THE FOURTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION."
{¶ 15} In his first assignment of error, Jones argues that evidence garnered in a search of a building at 1030 Kenmore Boulevard, and any evidence obtained as a result of that search, should have been suppressed at trial, in that the warrantless entry was contrary to law and not subject to an exception for a warrantless search. We agree.
{¶ 16} An appellate court's review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332. Whether an officer has probable cause or reasonable suspicion to make a warrantless arrest is reviewed by an appellate court de novo. State v. Bing (1999), 134 Ohio App.3d 444,448, citing Ornelas v. United States (1996), 517 U.S. 690, 699,116 S.Ct. 1657, 134 L.Ed.2d 911. However, "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer (1996), 112 Ohio App.3d 521,548. Accordingly, "[a]n appellate court must review the trial court's findings of historical fact only for clear error, giving due weight to inferences drawn from those facts by the trial court. The trial court's legal conclusions, however, are afforded no deference, but are reviewedde novo." State v. Russell (1998), 127 Ohio App.3d 414, 416, citingOrnelas, 517 U.S. at 699.
{¶ 17} The Fourth Amendment to the United States Constitution guarantees certain protections: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" Section 14, Article I of the Ohio Constitution, contains language nearly identical to that of theFourth Amendment, and similarly prohibits unreasonable searches and seizures. See State v. Kinney (1998), 83 Ohio St.3d 85, 87. "Section 14, Article I
of the Ohio Constitution protects commercial buildings as well as private homes and offices." State v. Penn (1991), 61 Ohio St.3d 720, syllabus. The exclusion of evidence obtained in violation of these constitutional guarantees is an essential part of the Fourth Amendment. State v. Jones
(2000), 88 Ohio St.3d 430, 434; Mapp v. Ohio (1961), 367 U.S. 643,655-656, 81 S.Ct. 1684, 6 L.Ed.2d 1081.
{¶ 18} Warrantless searches are per se unreasonable. State v.Myers (1997), 119 Ohio App.3d 376, 379-80, citing Katz v. United States
(1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. There are four exceptions to the warrant requirement which justify a warrantless search of a building: (1) an emergency situation, (2) search incident to an arrest, (3) "hot pursuit" and (4) easily destroyed or removed evidence.State v. Bowe (1988), 52 Ohio App.3d 112, 113-114. A showing that the police officers had reasonable grounds to believe some kind of emergency existed is sufficient to establish an exception for an emergency. Statev. Hyde (1971), 26 Ohio App.2d 32, 34. A warrantless search must be "strictly circumscribed by the exigencies which justify its initiation."Terry v. Ohio (1968), 392 U.S. 1, 25-26, 88 S.Ct. 1868, 20 L.Ed.2d 889. "[T]he pivotal criterion is the reasonableness of the belief of the police as to the existence of the emergency and not the existence of the emergency in fact." State v. Bell (Feb. 23, 1978), 9th Dist. Nos. 8496, 8592, at 6-7.
{¶ 19} In the journal entry denying the motion to suppress, the trial court made the following findings of fact relevant to the initial entry: (1) the officers saw a person in the building; (2) the person came out and locked the door behind him; and, (3) the person was in possession of a female's identification card. Our review of the record indicates that the trial court's factual findings are supported by the testimony presented at the hearing on the motion to suppress, and thus we find no clear error in the trial court's findings of fact.
{¶ 20} Therefore, it is left to this Court to determine if those facts are adequate to support a warrantless search. The only exception to a warrantless search asserted in this case is the exception for an emergency. Under this exception, the police officers, in light of all the circumstances, must be reasonable in their belief that some kind of emergency existed. The trial court found reasonableness in the belief there was a burglary in progress, due to the three facts listed above. We do not agree that these facts support a reasonable belief of an existing emergency.
{¶ 21} The officers testified they had been patrolling the area all evening and did not see Jones walking. Further, there was no testimony that while doing the patrols in the area, they observed suspicious activity around the building or the car Jones had parked nearby, until they saw Jones inside the building. There were no signs of forced entry upon the building.
{¶ 22} When Jones exited the building, according to the testimony, he was in possession of a "quite a few" keys, one of which was a key to the building. Jones used one key to quickly lock the door behind him when he exited; there was no testimony that he demonstrated a need to investigate which key of the bunch was required, ruling out the possibility that he had just obtained the keys once he gained access to the building and that he was unfamiliar with them.
{¶ 23} There is scant testimony regarding the information provided on the female's identification card that was in Jones' possession. The testimony was that the card belonged to Jones' wife. It is unknown through the record whether she used Jones' last name on the identification card, or if Jones explained to the officers that the woman on the identification card was his wife, or if so, whether they believed or disbelieved him. That Jones was in possession of a woman's identification card is not sufficient to make reasonable the subjective belief of an emergency.
{¶ 24} We consider that Section 14, Article I of the Ohio Constitution protects commercial buildings from unreasonable searches and seizures, in the same manner as it protects private residences. We believe that if the facts found by the trial court were applied to Jones inside his private residence instead of a commercial building, then it would be clear that a warrantless search was not justified. As it was, Jones was inside his own building and was not obligated to grant the police entry, and the police were not entitled to enter without a warrant because their stated belief in an emergency was unreasonable. Therefore, the motion to suppress the evidence, gleaned both directly and subsequently from the entry into 1030 Kenmore Boulevard, should have been granted.
{¶ 25} Jones's first assignment of error is sustained. In accordance, we vacate the order denying Jones' motion to suppress. This Court orders that all evidence obtained as a result of the search of 1030 Kenmore Boulevard on November 4, 2001, is suppressed.
 Assignment of Error No. 2
{¶ 26} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS THE FORFEITURE OF REALTY ON THE GROUNDS THAT APPELLEE FAILED TO SPECIFY WITHIN THE INDICTMENT THE NATURE OF THE RIGHT, TITLE, OR INTEREST OF THE ALLEGED OFFENDER IN THE PROPERTY TO BE FORFEITED PURSUANT TO ORC SEC. 2925.42(B)(1)(A)" (SIC.)
{¶ 27} In the second assignment of error, Jones argues that the indictment for the criminal charge failed to specify certain statutory requirements necessary to the forfeiture of property, and therefore it was error for the trial court to deny the motion to dismiss the forfeiture.
{¶ 28} Forfeiture of property is dependent upon a conviction. Our ruling in the first assignment of error may result in a vacation of the conviction. Therefore, we decline to address this second assignment of error.
 III.
{¶ 29} The judgment denying the motion to suppress in the Summit County Court of Common Pleas is vacated, and the cause remanded for proceedings consistent with this opinion.
WHITMORE, J. CONCURS
[1] The two males arrested at 567 Harvey Avenue were also parties in the motion to suppress; however, they are not parties to this appeal.